**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                 Case No. 16-10894

ESTATE OF ALBERT CHICOREL, et al.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER BRIEFING**

In this action Plaintiff United States of America seeks to recover back taxes allegedly owed by Defendant Estate of Albert Chicorel. Before the court is the government's motion for summary judgment. (Dkt. # 22.) The matter is fully briefed and a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the court will grant the motion in part and direct further briefing.

## I. BACKGROUND

The following facts are undisputed unless otherwise noted. Decedent Albert Chicorel died on October 26, 2006. (Dkt. # 25, Pg. ID 274.) In the year prior to his death, Decedent was placed into a conservatorship under the supervision of the Oakland County Probate Court. (*Id.* at Pg. ID 275.) The court-appointed conservator prepared Decedent's 2002, 2003, and 2004 federal income tax returns. (*Id.*) Defendants aver that "virtually of Decedent's income reported in these tax returns was stolen from the Decedent by his business associates." (*Id.*)

A delegate of the Secretary of the Treasury made timely assessments against Decedent for unpaid federal income taxes, penalties, and interest for each year's unpaid taxes. (Dkt. # 22, Pg. ID 216.) The assessments are reflected in the following table, taken from Defendants' opposition brief:

| Tax Period | Tax Assessment Date | Initial Assessment [(Dkt. # 25-4)] | Balance due as of 03/09/2016 according to Plaintiff |
|---|---|---|---|
| 2002 | 09/12/2005 | $140,903.52 | $234,250.05 |
| 2003 | 02/06/2006 | $175,825.98 | $292,760.79 |
| 2004 | 03/13/2006 | $108,294.20 | $184,709.71 |
| | **Total** | **$425,023.70** | **$711,720.55** |

(Dkt. # 25, Pg. ID 276.) Plaintiff avers that as of March 1, 2017, the total amount due is $738,344.26. (Dkt. # 22-3.)

Shirley Behar, successor conservator for Decedent, sent a request for collection due process hearing concerning the 2003 and 2004 taxes to the IRS dated June 27, 2006. The IRS responded on February 7, 2007, with a letter titled "Notice of Determination Concerning Collection Action(s) under Section 6329 and/or 6330." (Dkt. # 22-4, Pg. ID 255; Dkt. # 22-5, Pg. ID 264-65.) The IRS letter advised Ms. Behar that the IRS would file a proof of claim in the probate proceeding once it was opened and no other collection action would be taken at that time. (Dkt. # 22-4, Pg. ID 261.)

Unsupervised probate proceedings commenced in the Oakland County, Michigan Probate Court on March 6, 2007. Decedent's nephew, Richard Behar, was appointed personal representative on April 27, 2007. Michigan statute requires the personal representative to publish a "notice to creditors" stating that creditors have four months

after the date of publication to present their claims. Mich. Comp. Laws § 700.3803. Pursuant to the statute, Mr. Behar published a notice to creditors on May 4, 2007, in the Oakland County Legal News. (Dkt. # 25, Pg. ID 288.)

The IRS mailed a proof of claim for the assessed income taxes to the Oakland County Probate Court and Steven Cohen, attorney for Mr. Behar, on January 28, 2009. (Dkt. # 22-6.) The proof of claim was recorded with the Oakland County Probate Court the following day. (Dkt. # 22-7.) The probate proceeding is ongoing, and no other collection action took place until the government filed the instant litigation on March 11, 2016. (Dkt. # 1.)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted). The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient

disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In evaluating a summary judgment motion, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . credibility judgments and weighing of the evidence are prohibited." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (internal quotation marks and citations omitted).

### III. DISCUSSION

Defendants raise two arguments in opposition to summary judgment. First, Defendants contend that the court should decline to exercise its jurisdiction over this matter under principles of comity. Second, Defendants argue that the government is barred by the statute of limitations from enforcing the 2002 assessment.[1] The court will reject Defendants' first argument, but will require further briefing before it addresses the second one.

### A. Comity

The comity doctrine "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction." *Levin v. Commerce Energy, Inc.* 560 U.S. 413, 421 (2010). The Supreme Court has explained that the doctrine reflects:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

---

[1] Defendants state that if the court rejects their comity argument, they stipulate to judgment on the 2003 and 2004 assessments. (*See* Dkt. # 25, Pg. ID 272-73.) Accordingly, the court will grant Plaintiff's motion with respect to the 2003 and 2004 assessments.

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1971) (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).

Federal courts generally recognize probate proceedings as particularly state-law centric, and the courts have "long recognized a probate exception, kin to the domestic relations exception, to otherwise proper federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 296 (2006). This does not imply that federal courts refrain from adjudicating matters simply because a probate proceeding is ongoing, however. "[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Id.* (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)).

Defendants contend that the Oakland County Probate Court is "uniquely qualified to sort out" the questions of state law presented by the statute of limitations question. (Dkt. # 25, Pg. ID 282.) Defendants also aver that the government has already stated that it intends to pursue collection against Chicorel Lyons, LLC and the Decedent's trust in state court, as this court barred them from doing in this proceeding when it denied their motion to file a second amended complaint. (*See* Dkt. # 17.) Thus, exercising comity may consolidate these issues for a single proceeding in front of the court that Defendants claim is best suited to address them—though the government says it has "no intent" to pursue collections against third parties in the probate court. (Dkt. # 26, Pg. ID 333.)

5

Defendants bring their comity argument for the first time in their response brief to the government's motion for summary judgment, filed March 22, 2017. (Dkt. # 25.) Defendants waited until three weeks after the March 1, 2017 dispositive motion deadline to raise the issue. As a result, Defendants' comity argument is untimely.

In any event, the court finds that comity is not called for here. While the probate proceeding is ongoing, adjudicating this issue would only settle the rights of the claimant and would not interfere with the probate court's possession of the property; *Marshall* explains that this is the type of dispute where federal jurisdiction is appropriate. 547 U.S. at 296. Further, the principal legal question is the proper interpretation of a federal statute—whether filing a proof of claim in probate constitutes a "proceeding in court" under 26 U.S.C. § 6502(a). Michigan law is certainly relevant, but the court is ultimately called upon to answer a federal question, which this court is at least as qualified to do as the Oakland County Probate Court. *Cf. United States v. Craft*, 535 U.S. 274 (2002) (finding that although state law governs property rights, whether state-law rights qualify as "rights to property" within the meaning of the federal tax lien statute is a question of federal law).

This case is properly before the court. In light of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them" *Romine v. Compuserve Inc.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976)), the court declines to dismiss this action under the comity doctrine.

## B. Statute of Limitations

Defendants contend that the government's claim for the 2002 assessment is time-barred. The relevant statute provides,

> Where the assessment of any tax imposed . . . has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made of the proceeding begun . . . within 10 years after the assessment of the tax . . . . If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

26 U.S.C. § 6502(a). The taxes for 2002 were assessed on September 12, 2005. (Dkt. # 25, Pg. ID 276.) The government filed this action on March 11, 2016, more than ten years after the assessment.

The government argues that its proof of claim constituted a ""proceeding in court" within the meaning of § 6502(a) that tolled the running of the limitations period. (Dkt. # 22, Pg. ID 227-35.) The parties agree that the question turns on the "nature, function and effect" of submitting a probate claim under local law, as stated in *United States v. Saxe*, 261 F.2d 316, 319 (1st Cir. 1958). (Dkt. # 22, Pg. ID 229; Dkt. # 25, Pg. ID 283.)

However, neither party addresses why an earlier, timely proceeding in court would toll the statute with respect to a later, separate proceeding in court. The language of the statute appears to toll only "the period during which such tax may be collected by levy[.]" 26 U.S.C. § 6502(a). With the exception of *In re Estate of Young*, 2010 WL 1427584 (S.D. Miss. April 8, 2010), all of the parties' cited cases predate this language,

which was adopted in 1988.[2] *See* P.L. 100-647, Sec. 1015(u)(1) (1988). The *In re Estate of Young* court does not address this question.

Section 6331(b) provides that "the term 'levy' as used in this title includes the power of distraint and seizure by any means." 26 U.S.C. § 6331(b). The Northern District of Ohio has discussed this definition of "levy" in detail:

> Under the Internal Revenue Code, the word "levy" merely "includes," or encompasses, the power-to-seize definition. The word "includes," the Code explains, "shall not be deemed to exclude other things otherwise within the meaning of" levy. 26 U.S.C. § 7701(c). "Levy," therefore, is not simply a synonym for "seizure" and nothing more. Rather, the term "levy" in the Code denotes everything else that it otherwise denotes in American law.
>
> In American legal usage, levy "is an ambiguous word, with its meaning dependent on the context in which it is used." *Hill v. Whitlock Oil Services, Inc.,* 450 F.2d 170, 174 (10th Cir.1971). It is also a broad term: it "may refer to all the steps, collectively, by which public revenue is raised." *In re Zoller's Estate,* 53 Del. 448, 171 A.2d 375, 379 (1961); *State ex rel. Board of Education v. Hamrock,* 11 Ohio Misc. 36, 225 N.E.2d 795, 798 (Ohio Com.Pleas 1967).
>
> In federal tax law, "levy is ordinarily used to describe *the process* of reaching amounts owing to the taxpayer by third persons (e.g. bank deposits)." 4 Boris Bittker & Lawrence Lokken, Federal Taxation of Income, Estates, and Gifts (2d ed. 1992) ¶ 111.6.5 at 111–72 (emphasis added). This "process" is understood broadly: whether a levy was made does not depend on whether the Internal Revenue Code's formal levy procedures were followed. *Interfirst Bank Dallas, N.A. v. United States,* 769 F.2d 299, 304 (5th Cir.1985). Instead, "any forced taking of property" is a levy. *Id.* at 305 n. 9.

*Miller v. United States*, 921 F. Supp. 494, 497–98 (N.D. Ohio 1996). The court understands this action to be seeking to reduce the alleged outstanding liability for the 2002 tax assessment to judgment, not to be seeking a "forced taking of property."

---

[2] The 1988 amendment substituted the current language for the following: "The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer." P.L. 100-647, Sec. 1015(u)(1) (1988).

Further briefing addressing this issue would be helpful. Accordingly, the court will direct both parties to provide supplemental briefs, no longer than five pages, addressing (1) whether the court's preliminary reading of the statute is correct and (2) whether some doctrine outside the text of § 6502(a) tolls the limitations period with respect to an otherwise untimely proceeding in court based on an earlier, timely proceeding.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's motion for summary judgment (Dkt. # 22) is GRANTED IN PART. The motion is GRANTED with respect to the 2003 and 2004 tax assessments. Judgment on the balance of the motion is RESERVED.

IT IS FURTHER ORDERED that the parties are DIRECTED to provide supplemental briefing as set forth above by **May 5th, 2017.**

        s/Robert H. Cleland      /
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: April 24, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 24, 2017, by electronic and/or ordinary mail.

        s/Lisa Wagner      /
        Case Manager and Deputy Clerk
        (810) 292-6522